IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge William J. Martínez

Civil Action No. 22-cv-1678-WJM-STV

BERNIE SANCHEZ-BELL,

    Plaintiff,

v.

CSAA GENERAL INSURANCE COMPANY,

    Defendant.

## ORDER DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

Before the Court is Defendant CSAA General Insurance Company's ("Defendant") Motion for Summary Judgment (the "Motion"). (ECF No. 25.) For the following reasons, the Motion is denied.

### I. LEGAL STANDARD

Summary judgment is warranted under Federal Rule of Civil Procedure 56 "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248–50 (1986).  A fact is "material" if, under the relevant substantive law, it is essential to proper disposition of the claim.  *Wright v. Abbott Labs., Inc.*, 259 F.3d 1226, 1231–32 (10th Cir. 2001).  An issue is "genuine" if the evidence is such that it might lead a reasonable trier of fact to return a verdict for the nonmoving party.  *Allen v. Muskogee*, 119 F.3d 837, 839 (10th Cir. 1997).

In analyzing a motion for summary judgment, a court must view the evidence and

all reasonable inferences therefrom in the light most favorable to the nonmoving party. *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 670 (10th Cir. 1998) (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)).  In addition, the Court must resolve factual ambiguities against the moving party, thus favoring the right to a trial.  *See Houston v. Nat'l Gen. Ins. Co.*, 817 F.2d 83, 85 (10th Cir. 1987).

## II. BACKGROUND[1]

On March 8, 2021, Plaintiff Bernie Sanchez-Bell ("Plaintiff") was involved in an automobile accident for which she was not at fault.  (ECF No. 25 at 5, ¶ 1; ECF No. 27 at 2, ¶ 1.)  Plaintiff alleges this accident resulted in injuries to her left knee that required surgery to repair.  (*See* ECF No. 27 at 6–7, ¶¶ 6–9.)  Prior to the commencement of this action Plaintiff recovered from the at-fault driver payment of that driver's $25,000 liability policy limit.  (*See* ECF No. 25 at 2; ECF No. 27 at 22.)

### A. Applicable Policy Provisions

Defendant issued an insurance policy covering Plaintiff ("Policy"), which was effective on the date of her accident and included Underinsured Motorist ("UIM") coverage.  (ECF No. 25 at 5, ¶ 2; ECF No. 27 at 2, ¶ 2; ECF No. 25-2 at 1.)

The Policy contains the following relevant provision regarding cooperation:

> [Defendant] ha[s] no duty to provide coverage under this policy if an "insured" fails to comply with the following duties:
>
> . . .
>
> **B.**   A person seeking any coverage must:

---

[1] The following factual summary is based on the parties' briefs on the Motion and documents submitted in support thereof.  These facts are undisputed unless attributed to a party or source.  All citations to docketed materials are to the page number in the CM/ECF header, which sometimes differs from a document's internal pagination.

2

> **1.** Cooperate with [Defendant] in the investigation, settlement or defense of any claim or lawsuit.

(ECF No. 25-2 at 39.)

**B.  Material Facts**

1.  Plaintiff's Demands for UIM Benefits

On September 29, 2021, Plaintiff sent a demand letter through counsel listing $34,237.88 in medical expenses to date. (ECF No. 25-6.) On October 28, 2021, Defendant informed Plaintiff via letter that its Claim Representative, Darcy Drew ("Drew"), had determined her knee injury was not a result of the accident. (ECF No. 25-7.) This determination relied principally on: (1) a prior surgery on the same knee that took place in April 2019; and (2) Plaintiff's alleged failure to complain about the knee injury until April 2021, despite the accident taking place in early March 2021. (*Id.*)

Plaintiff sent another demand letter on May 5, 2022, listing $59,080.07 in updated medical expenses to date and attaching a "narrative" from Plaintiff's treating knee surgeon, Dr. Michael E. Messner ("Dr. Messner"). (ECF No. 25-8.) The body of the second demand letter included an excerpt of the attached narrative, in which Dr. Messner opined that the damage treated by a post-accident surgery he performed was "consistent with the described MVA accident [*sic*] on 3/8/2021." (*Id.*)

In response to this letter, Drew spoke with Plaintiff's counsel over the phone on June 2, 2022, and she sent a follow-up letter on June 3, 2022. (ECF No. 25 at 6, ¶¶ 17–18; ECF No. 27 at 4, ¶¶ 17–18.) The follow-up letter stated that Defendant could neither accept nor reject the demand at that time and requested the following additional information: (1) "all prior records and films going back 5 years for both knees"; and (2) "a statement from [Plaintiff] that explains her knee injury, specifically what she hit her

3

knee on, why she didn't report the injury at the hospital and why she had no complaints until many days later." (ECF No. 25-11.) The follow-up letter did not provide a time frame for Plaintiff to respond. (*Id.*)

## III. PROCEDURAL HISTORY

On June 13, 2022, Plaintiff filed this action in state court, alleging three claims: (1) breach of contract; (2) statutory unreasonable delay/denial of benefits; and (3) common-law bad faith. (ECF No. 25 at 7, ¶ 19; ECF No. 27 at 4, ¶ 19; *see generally* ECF No. 4.) Defendant answered Plaintiff's Complaint, asserting the affirmative defense of failure to cooperate. (ECF No. 12 at 10, ¶ 3.) On July 6, 2022, Defendant removed Plaintiff's action to this Court pursuant to this Court's diversity jurisdiction, 28 U.S.C. § 1332(a). (ECF No. 1.)

On June 16, 2023, Defendant filed the Motion, arguing it is entitled to summary judgment on all claims. (ECF No. 25.) On July 7, 2023, Plaintiff filed a response in opposition (ECF No. 27), to which Defendant replied (ECF No. 28).

## IV. ANALYSIS

### A. Breach of Contract Cause of Action

Defendant's only argument in support of summary judgment on Plaintiff's breach-of-contract cause of action is that Plaintiff failed to cooperate with its investigation of her UIM claim. (ECF No. 25 at 9–18.) Though this is Defendant's sole argument, it occupies a substantial portion of the Motion's page count, at least in part because Defendant presents alternate versions of the theory—first, as an affirmative defense, and second, as a condition precedent. (*See id.*) As one Division of the Colorado Court of Appeals recently observed, the Colorado General Assembly has obviated academic and judicial debate about these two theories of noncooperation by "creat[ing statutory]

4

rules for insurers asserting" it.  *Wenzell v. United Servs. Auto. Assoc.*, --- P.3d ----, 2024 WL 1665333, *5 (Colo. App. April 18, 2024) (citing Colo. Rev. Stat. § 10-3-1118).

Section 1118, which became effective in September 2020 and thus prior to the filing of this action, *requires* insurers to take certain steps or forfeit any later-asserted noncooperation litigation defense.  Period.  *Id.* at *8 ("[T]he plain language and purpose of section 10-3-1118 indicate that strict compliance with its provisions is required."). When the alleged noncooperation takes the form of an insured's alleged failure to act upon a reasonable request for documents—such as urged in the Motion—the request must "formally and in writing provide[ the insured] with sixty days to comply with the[] specific request[] for information."  *Id.* at *6.  Failure to do so constitutes a failure to comply with Section 1118, and the insurer forfeits the ability to assert a defense of noncooperation premised on these alleged facts in subsequent litigation.

*Wenzell* expressly disapproved of multiple cases from this District, upon which Defendant relies, that hold or suggest otherwise; however, the Court is duty bound to follow the lead of Colorado courts in the interpretation of Colorado statutes.  *Id.* (discussing *Aponte v. Allstate Fire & Cas. Ins. Co.*, 2023 WL 129693 (D. Colo. Jan. 9, 2023); and then discussing *Nofsinger v. Allstate Fire & Cas. Ins. Co.*, 2022 WL 4536232 (D. Colo. Sept. 28, 2022); *see Reeves v. Enter. Prods. Partners, LP*, 17 F.4th 1008, 1012 (10th Cir. 2021) (explaining that federal courts sitting in diversity must "attempt to predict what the state's highest court would do" by, among other things, "seek[ing] guidance from decisions rendered by lower courts in the relevant state" (internal quotation marks omitted)).

Ultimately, the Court finds that *Wenzell* is a better predictor of how the Colorado Supreme Court would interpret and apply the recently codified provisions of Section 1118 than decisions from this District.  The record before the Court is undisputed that Defendant did not formally and in writing provide Plaintiff with sixty days to comply with its request that she provide it with specific documents and information regarding the medical treatment and procedures she had previously received and undergone for her knee.  Therefore, the Court concludes Defendant's noncooperation defense, predicated upon any alleged failure of Plaintiff to act upon its request for documents and information, is barred.

While some observers or other courts may conclude this is too harsh a result for Defendant, the Court is unmoved for several reasons.  First, Section 1118 is explicitly concerned with litigation such as this—it does not require the denial of the *claim* to be based on noncooperation but merely the insured's attempt to defeat liability after litigation has commenced.  Colo. Rev. Stat. § 10-3-1118(1) ("To *plead* or prove a failure-to-cooperate defense *in an action* . . . , each of the following conditions must be met before *the defense is asserted in a court of law or an arbitration*." (emphasis added)).  Second, whatever one thinks of Section 1118 as a matter of public policy, determining the policy of the State of Colorado is far beyond the Court's purview.  Third, Defendant had more than a year and a half after Section 1118's effective date (and nearly two years after it was enacted) to ensure that its template requests for additional information were properly amended to comply with the newly enacted statute.  *See Wenzell*, 2024 WL 1665333, *5 ("Section 10-3-1118 went into effect on September 14, 2020, and applies to post-enactment litigation."); Colorado General Assembly, HB 20-1290,

6

https://leg.colorado.gov/bills/hb20-1290 (last visited May 31, 2024) (signed by Governor Jared Polis on July 2, 2020).  Surely, that is sufficient time for an insurance company to update relevant forms and policies to comply with state law.  And fourth, Defendant can easily avoid a similar result in future litigation by simply complying with Section 1118.

B.     **Statutory & Common-law Causes of Action**

1.     Reasonableness

Defendant seeks summary judgment on both Plaintiff's statutory and common-law claims on the basis that its investigation of her UIM claim was reasonable as a matter of law.  (ECF No. 25 at 18–23.)  Whether Defendant acted unreasonably in its investigation of or failure to pay Plaintiff's UIM claim is an element common to both causes of action.  *Schultz v. GEICO Cas. Co.*, 429 P.3d 844, 847–48 (Colo. 2018).

Defendant's reasonableness argument rests on its view that the filing of this action prematurely cut off its claim investigation, and no reasonable jury could conclude otherwise.  (ECF No. 25 at 19–20 (citing *Williams v. Owners Ins. Co.,* 621 F. App'x 914, 916, 920 (10th Cir. 2015)).)  Defendant relies on *Williams*, where the Tenth Circuit affirmed summary judgment, reasoning that a 46-day delay between an insured's demand and an insurer's settlement offer was reasonable as a matter of Colorado law. 621 F. App'x at 920.  Further, Defendant argues that Colorado regulations requiring insurers make determinations on claims within 60 days of receiving a "valid and complete claim," while not dispositive, confirms the reasonableness of its continued investigation of Plaintiff's claim.  (ECF No. 25 at 20–21 (quoting Colo. Code Regs.702-5:5-1-14(4)).)  Defendant then argues that like the insurer in *Williams*, it is entitled to summary judgment because no reasonable jury could conclude the 36 days that passed between the second demand letter, dated May 5, 2022, and the filing of this suit was an

7

unreasonable delay.  (*Id.* at 22.)

As Plaintiff points out in response—but perhaps does not emphasize enough—much longer than 36 days elapsed between Plaintiff's *first* demand letter, dated September 29, 2021, and her filing of this suit.  (ECF No. 27 at 22.)  That initial demand letter noted costs in excess of the responsible driver's $25,000 policy limit.  Defendant makes no effort to explain how the more than nine-month period that passed from September 29, 2021, to June 13, 2022, is so similar to the 46-day period in *Williams* that the Court should find as a matter of law that Defendant's investigation was reasonable.[2]  (*See generally* ECF Nos. 25, 30.)  A jury could conclude that Defendant's investigation was reasonable, particularly given Defendant's suggestion that Plaintiff's claim was not "complete" as of September 29, 2022; however, a jury might also consider the entire period from September 2021 to June 2022 and conclude Defendant unreasonably delayed UIM benefits to which Plaintiff was entitled.

In the insurance context, "[w]hat constitutes reasonableness under the circumstances is ordinarily a question of fact for the jury."  *Vaccaro v. Am. Fam. Ins. Grp.*, 275 P.3d 750, 759 (Colo. App. 2012).  Defendant has provided no reason why this case is one of the relatively few "appropriate circumstances" to deviate from this general rule.  *Id.*  Accordingly, the Motion is denied with respect to Defendant's argument that its investigation was reasonable as a matter of law.

2. Damages (Common-law Cause of Action)

Defendant's last argument is that Plaintiff cannot prove damages because she

---

[2] The Court is unpersuaded by Defendant's argument that it should not be forced to predict what a doctor might say about an insured's injury or risk a bad faith/unreasonable delay action.  (*See* ECF No. 25 at 22–23.)  This line of argument simply ignores Plaintiff's first demand letter.

8

has no competent evidence of damages other than those arising from Defendant's alleged failure to pay covered benefits. A plaintiff can prevail on both an underlying breach of insurance contract *and* dependent tort causes of action. *See Am. Fam. Mut. Ins. Co. v. Barriga*, 418 P.3d 1181, 1185–86 (Colo. 2018) (statutory claim). The Court's consideration of this argument proceeds no further, and the Motion is denied on this point.

## V. CONCLUSION

For the reasons stated, the Court ORDERS as follows:

1. Defendant's Motion for Summary Judgment (ECF No. 25) is DENIED; and

2. This action REMAINS SET for a Final Trial Preparation Conference on **September 20, 2024 at 2:00 p.m.** and a 5-day jury trial to begin **October 7, 2024 at 8:30 a.m.**

Dated this 3rd day of June, 2024.

BY THE COURT:

_____
William J. Martinez
Senior United States District Judge